UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11-23479-Civ-SCOLA/BANDSTRA

RICHARD S. LEHMAN, individually
and as Executor of the Estate of Wilson C.
Lucom, RICHARD S. LEHMAN, P.A., and
the WILSON C. LUCOM TRUST FUND
FOUNDATION,

    Plaintiffs,

vs.

HILDA PIZA LUCOM, MADELAINE ARIAS
PIZA, MARGARITA ARIAS PIZA, MELINDA
ISABEL ARIAS DE MORRICE, FRANK
MORRICE, GILBERTO ARIAS, JR., HECTOR
INFANTE, EDNA RAMOS CHUE, INFANTE &
PEREZ-ALMILLANO, JUAN BOSCO MOLINA,
MARTA LUISA CAÑOLA, WILLIAM PARODI,
TANYA STERLING BERNAL, OYDEN ORTEGA,
ALBERTO CIGARRUISTA, HARLEY J.
MITCHELL, AND JOHN DOES 1 THROUGH 19,

    Defendants.
_____/

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Defendants' Motions to Dismiss (ECF Nos. 16, 51, 52, 53), which have been converted into Motions for Summary Judgment in order to consider matters outside of the pleadings. On May 10, 2012, the Court held a hearing on the motions for summary judgment. The Court has considered the parties' arguments, the record, and the relevant legal authorities. For the reasons explained in this Order, the Motions for Summary Judgment are granted on the grounds that the Plaintiffs' claims are barred by the statute of limitations.

### I. BACKGROUND

This case involves allegations of fraud, extortion, corruption, theft, money laundering, and bribery of foreign officials, relating to a dispute over the estate of Wilson C. Lucom. The Plaintiffs are Richard S. Lehman, individually, Richard S. Lehman, as Executor of the Lucom

Estate, Richard S. Lehman P.A., and the Wilson C. Lucom Trust Fund Foundation. Lehman is the sole director of the entity that is the sole trustee of the Foundation.[1] The Defendants consist of Wilson C. Lucom's widow, Hilda Piza Lucom, and several of Wilson C. Lucom's adult step-children. Other Defendants include a Panamanian law firm and two of its lawyers, as well as several Panamanian prosecutors and judges.

According to the Complaint the Defendants have formed a criminal enterprise "with the singular purpose of stealing for themselves the vast fortune of Wilson C. Lucom." (Compl. ¶ 1, ECF No. 1.) "The criminal conspiracy had one objective: thwart the only person who was appointed the Executor of the Estate of Wilson C. Lucom . . . through acts of intimidation[,] extortion, corruption, theft, money laundering, and bribery of foreign officials, so that the Defendants could steal the Estate assets for themselves." (Compl. ¶ 2.) The Plaintiffs have alleged five counts: (1) violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961–1968 (2006) (Count I), conspiracy to violate the RICO Act (Count II), violation of Florida's Civil Remedies for Criminal Practices Act, Florida Statute Sections 772.101–772.19 (2010) (Count III), unjust enrichment (Count IV), and conversion (Count V).

Several of the Defendants moved to dismiss the Complaint setting forth a variety of reasons. Pursuant to Federal Rule of Civil Procedure 12(d), the Court notified the parties that it would consider matters outside of the Complaint, and was therefore converting the motions to dismiss into motions for summary judgment. The parties were given additional time to submit

---

[1] It cannot go unmentioned that Lehman's actions with respect to Lucom's Florida estate have been thoroughly repudiated by Florida courts. A Florida trial court found Lehman to be "a covetous opportunist using the ancillary estate assets to thwart the Orders of the Panama Court in the domiciliary estate, seeking personal advantage and control of assets in the $25-$50 million domiciliary estate." *In Re Estate of Wilson C. Lucom*, No. 50 2006 CP003580XXXXSBIY (Fla. 15th Cir. Ct. Mar. 5, 2009) (ECF No. 17-1). That court also found that Lehman comingled $423,261.15 of estate funds with his law firm's general account, failed to keep adequate accounting records, and failed to pay any interest to the estate. *Id.* In affirming the trial court's decision, a Florida appellate court found that Lehman "improperly used funds of the ancillary estate to fund his litigation in Panama over the domiciliary estate and to clear his name from personal attacks." *Lehman v. Lucom*, 78 So. 3d 592, 594 (Fla. Dist. Ct. App. 2011). The Florida appellate court found competent, substantial evidence that Lehman acted in bad faith to the interests of the estate and misappropriated estate funds in violation of Florida law. *Id.* As discussed at the May 10, 2012 hearing, Lehman has not sought relief from these orders under Florida Rule of Civil Procedure 1.540. Relatedly, it also appears that the Florida Bar is currently investigating Lehman's actions. While these issues have no bearing on the Courts' summary judgment determination, the Court includes them for context and completeness.

supplemental briefs and evidence in support of, or in opposition to, the motions for summary judgment.[2]

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). Rule 56 requires a court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56[(c)] "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

---

[2] The parties were given a sixteen day briefing schedule which consisted of nine days to file their initial briefs and evidentiary materials, followed by seven days to file their responses to the opposing side's briefs and evidence. The Plaintiffs have suggested that they were only given nine days' notice that the Court was going to convert the motions to dismiss into motions for summary judgment. First, as explained, that is a mischaracterization of the sixteen day notice period and briefing schedule allotted in this case. The Plaintiffs were permitted to, and did, file supplemental materials throughout the sixteen day briefing period. (*See* Notice of Filing, ECF No. 166 (filed Apr. 25, 2012).) Second, the Plaintiffs have expressly indicated that they had sufficient time to gather evidence to counter the Defendants' statute of limitations argument. (Lehman Aff. ¶ 6, n.1, ECF No. 161-7.)

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### III. LEGAL ANALYSIS

The Defendants argue that the Plaintiffs' claims are barred by the statute of limitations. In support, the Defendants point to a civil complaint filed in a Florida court in January 2007. The Florida complaint raises many of the same claims of wrongdoing that are present in the RICO Complaint. The Plaintiffs respond to the statute of limitations argument by asserting that their "injury was the theft of the Lucom Estate and its assets, a fraudulent appropriation consummated in" 2010. (Resp. in Opp'n 12, ECF No. 27.) The Plaintiffs reason that since the goal of the criminal enterprise was not realized until 2010, that the statute of limitations did not begin to run until 2010.

"Civil RICO actions are subject to a four-year statute of limitations." *Pilkington v. United Airlines*, 112 F.3d 1532, 1534 (11th Cir. 1997).[3] The RICO statute of limitations begins to run on the date that a plaintiff knew, or should have known, of the injuries that justify the allegations in the complaint. *Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1251 (11th Cir. 2001); *Serpentfoot v. Rome City Comm'n*, 426 F. App'x 884, 887 (11th Cir. 2011) (both citing *Rotella v. Wood*, 528 U.S. 549, 552-53 (2000)). This is known as the "injury discovery rule." *Pac. Harbor Capital, Inc.*, 252 F.3d at 1251.

---

[3] The RICO Act makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (2006). To establish a federal civil RICO violation a plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," that resulted in (5) injury to a business or property, and that (6) the injury was caused by the substantive RICO violation. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006).

The state court action was filed in January 2007 by Richard S. Lehman, individually, and Richard S. Lehman, P.A.  (Fla. Compl. 1, ECF No. 16-6.)  Every named defendant in the Florida complaint is also named as a defendant in the RICO Complaint (*Compare* RICO Compl. 1, ECF No. 1 *with* Fla. Compl. 1, ECF No. 16-6.)  The main claim in the Florida complaint is for civil conspiracy.  The Florida complaint alleges that the defendants "set up a plan that is continuing today to abuse the judicial process of the Courts of both Panama and the United States in an attempt to intimidate, bribe, and extort Lehman to coerce him to resign in favor of Hilda [Piza Lucom] as the Executor in Panama and as Lucom's Personal Representative in Florida."  (Fla. Compl. ¶ 16, ECF No. 16-6.)  That assertion is strikingly similar to language in the RICO Complaint that "[t]he criminal conspiracy had one objective: thwart [Lehman] who was appointed the Executor of the Estate of Wilson C. Lucom (the "Estate"), through acts of intimidation[,] extortion, corruption, theft, money laundering, and bribery of foreign officials, so that the Defendants could steal the Estate asserts for themselves."  (RICO Compl. ¶ 2, ECF No. 1.)

The RICO complaint alleges that "Lehman and Lehman, P.A. have been injured in their business and property."  (RICO Compl. ¶ 182, ECF No. 1.)  The RICO complaint also alleges that "Lucom's Estate and the Foundation have been injured to their property by way of Defendants violations of [the RICO Act]."  Specifically, the RICO complaint alleges the Plaintiffs' damages include "damage to assets of Lucom's Estate and the Foundation, damage to Lehman's law practice, and the attorneys' fees and costs to defend itself in objectively baseless, improperly motivated sham litigation in Panama and in related litigation in the U.S."  (RICO Compl. ¶ 182, ECF No. 1.)  In other words, the Plaintiffs have alleged that were injured, at least in part, when they were forced to spend money to defend themselves from the attacks of the alleged RICO enterprise that was seeking to gain control of the Lucom Estate.

These assertions – that both Estate funds and Lehman's personal funds were spent in legal battles between the Plaintiffs and the Defendants – are supported by the record.  (*See, e.g.,* Lehman Aff. ¶¶ 34, 38, ECF No. 161-7; Letter from Lehman to The Florida Bar 31 (Apr. 3, 2012), ECF No. 161-18; Lehman Dep. 41:13 - 42:12, 43:19 - 45:4, 50:11-14, 62:6-12, Apr. 13, 2007, ECF No. 170-1; Lehman Dep. 518 - 531, 532 - 540, 550 - 564, 573 - 578, 581 - 586, July 13, 2007, ECF No. 170-4; *In Re Estate of Wilson C. Lucom*, No. 50 2006 CP003580XXXXSBIY, slip op. at ¶10 (Fla. 15th Cir. Ct. Mar. 5, 2009), ECF No. 17-1.)  The

record also reveals that a significant amount of this money was spent in 2006.  (*See id.*)  With respect to the Estate, the injury was the expenditure of estate money to fend off the legal assaults of the alleged RICO enterprise.  With respect to the Foundation, the injury was the depletion of Estate money (spent on legal battles), leaving less money to ultimately be given to the Foundation.  With respect to both Lehman, and Lehman, P.A., the injury was, as alleged, attorneys' fees and costs spent on defending Lehman and Lehman, P.A. from the alleged personal attacks of the RICO enterprise.

In the Florida complaint, the plaintiffs' damages also allegedly included "the expenditure of funds to defend and preserve assets of the Estate and to defend against the unsubstantiated and false criminal charges and civil action."  (Fla. Compl. ¶ 59, ECF No. 16-6 .)  There is a clear overlap of the damages sought in the RICO complaint and those sought in the Florida complaint.  A closer comparison of some of the Plaintiffs' specific allegations in both complaints is helpful.

> ### a. Injuries in August 2006 involving Lehman being suspended as the Panamanian Executor of the Lucom Estate due to false allegations made by the Defendants to the Panamanian Probate Court.

Both the Florida complaint and the RICO complaint allege that in August 2006 the Defendants made false allegations to the Panamanian Probate Court that Lehman had a "quasi criminal background," and had stolen money from Lucom's Wachovia account in Florida. (RICO Compl. ¶ 63, ECF No. 1; Fla. Compl. ¶ 33, ECF No. 16-6.)  Both complaints allege that as a result of these false statements made to the Panamanian Probate Court, Lehman was suspended as the Panamanian Executor of the Lucom Estate.  (RICO Compl. ¶¶ 64-65, ECF No. 1; Fla. Compl. ¶ 34, ECF No. 16-6.)

Section B of the Plaintiffs' RICO Case Statement reads that each of the Plaintiffs in this matter were injured in August 2006 when:

> Hilda [Piza Lucom], in conjunction with (and conspiring with) Infante and the Arias Group, presented a Panamanian Probate Judge . . . with falsified "evidence" that Lehman was a crook that stole money from the Foundation.  Based on Hilda, Infante, and the Arias Group's corruption of the Judge, on August 31, 2006 in Order 1227 Lehman was "suspended" as Executor of the Estate.

(Am. RICO Stmt. § B, p.6, ECF No. 31-1.)[4]

### b. Injuries in August 2006 involving allegedly stolen stock certificates.

Both the Florida complaint and the RICO complaint allege that on August 25, 2006 Hilda Piza Lucom held a shareholders' meeting for a company called Valores. At this meeting Hilda Piza Lucom allegedly produced stolen stock certificates to support her assertion that she was the sole owner of Valores, and voted herself as the sole director of Valores. Shortly after the Valores shareholders' meeting Hilda Piza Lucom, with the assistance of other Defendants, allegedly sent the minutes of the Valores shareholders' meeting to Wachovia Bank in Florida in order to steal $3.4 million of Valores's money. In order to stop this alleged theft, Lehman obtained an injunction in the Florida Ancillary Estate proceeding. In late September 2006, Lehman was forced to obtain a second injunction to prevent another attempt by the Defendants to access additional Valores funds. (RICO Compl. ¶ 70-72, ECF No. 1; Fla. Compl. ¶¶ 40-41, ECF No. 16-6.)

Section B of the Plaintiffs' RICO Case Statement asserts that each of the Plaintiffs were injured in August 2006 when Hilda Piza Lucom stole shares of Valores from the Lucom Estate, and with the assistance of other Defendants attempted to obtain control of $3.4 million of Valores' money in a Wachovia Bank account. (Am. RICO Stmt. § B, pp.3, 9, ECF No. 31-1.)

### c. Injuries in September 2006 based on false criminal charges filed by the Defendants against Lehman.

Both the Florida complaint and the RICO complaint allege that the Defendants filed false criminal charges in Panama against Lehman September 2006. (RICO Compl. ¶ 81-82, ECF No. 1; Fla. Compl. ¶¶ 36-37, ECF No. 16-6.) Once again, Section B of the Plaintiffs' RICO Case Statement states that each of the Plaintiffs were injured in September 2006 when the Defendants falsely filed criminal charges against Lehman in Panama. (Am. RICO Stmt. § B, p.6, ECF No. 31-1.)

In reviewing the Plaintiffs' assertions in the RICO complaint and the Amended RICO Case Statement, the allegations in the Florida complaint, and the record evidence submitted by the Plaintiffs it is clear that the Plaintiffs knew that they had suffered injuries as a result of the

---

[4] Section D of the Plaintiffs' Amended Civil RICO Case Statement is titled "List the victims, and separately state when and how each victim was injured." (Am. RICO Stmt. § D, p.41, ECF No. 31-1.) The RICO Case Statement indicates that each of the named Plaintiffs were "injured on the various dates set forth in §§ (B), and (C), *supra*. Each separate incident represents a separate and independent injury to [each Plaintiff]." (*Id.*)

Defendants' allegedly illicit enterprise more than four year before filing their RICO complaint. Accordingly, the Plaintiffs' RICO claims are barred by the four year statute of limitations.

The Plaintiffs argue that the RICO complaint involves the Lucom Estate and the Foundation which were not involved in the Florida case. However, Richard S. Lehman, was undisputedly aware of injuries suffered by all of the Plaintiffs as a result of the Defendants' alleged criminal enterprise more than four years ago. All of the other Plaintiffs – Richard S. Lehman, P.A., Richard S. Lehman, as Executor of the Lucom Estate, and the Wilson C. Lucom Trust Fund Foundation – are merely alternate manifestations of Lehman. Simply put, if Lehman was aware of injuries caused by the Defendants' enterprise in January 2007, then all of the Plaintiffs were aware of these injuries in January 2007.

The allegations of the Florida complaint reveal that it was clear as of January 2007 that the Estate and the Foundation were both targets of the Defendants' alleged criminal enterprise. (*See* Fla. Compl. ¶ 29, ECF No. 16-6 (asserting that one of the conspirators' goals was to "obtain control of the Estate's assets and avoid funding the Foundation," and that the "conspirators are trying to take over control of the Estate . . . using any means possible to avoid the funding of the Foundation"); *see also* Fla. Compl. ¶¶ 30, 48.) It is equally clear that prior to the filing of the Florida complaint in January 2007, both Estate and personal money had been spent by Lehman in fending off attacks by the RICO enterprise (and every dollar spent by the Estate was one dollar less for the Foundation to ultimately receive). (*See* Lehman Aff. ¶¶ 34, 38, ECF No. 161-7; Letter from Lehman to The Florida Bar 31 (Apr. 3, 2012), ECF No. 161-18; Lehman Dep. 41:13 - 42:12, 43:19 - 45:4, 50:11-14, 62:6-12, Apr. 13, 2007, ECF No. 170-1; Lehman Dep. 518 - 531, 532 - 540, 550 - 564, 573 - 578, 581 - 586, July 13, 2007, ECF No. 170-4; *In Re Estate of Wilson C. Lucom*, No. 50 2006 CP003580XXXXSBIY, slip op. at ¶10 (Fla. 15th Cir. Ct. Mar. 5, 2009), ECF No. 17-1.) Since the Florida case was filed more than four years before the RICO action, the RICO claims are barred by the statute of limitations.

Completely contrary to their pleadings and the evidence submitted by them, the Plaintiffs assert that "the Estate's [and the Foundation's] RICO injury was perfected at the point in which the theft of the Lucom Estate and its assets [and the corresponding Foundation assets] occurred and was in fact commissioned – specifically the August 6, 2010 corrupt Panama Supreme Court decision." (Lehman Aff. ¶¶ 61, 64, ECF No. 161-7.) By this assertion, the Plaintiffs argue that the statute of limitations did not begin to run until the *successful completion* of the Defendants'

alleged RICO enterprise. (*See* RICO Compl. ¶ 1, ECF No. 1 (asserting that the purpose of the RICO enterprise was to steal the vast fortune of the Lucom Estate).) Under this reasoning a RICO claim would only accrue upon the successful completion of a RICO enterprise. The Plaintiff's conclusory (and self-contradictory) assertions notwithstanding, the law on this issue is clear: the RICO statute of limitations begins to run on the date that the Plaintiffs knew, or should have known, that they were injured. *Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1251 (11th Cir. 2001); *Serpentfoot v. Rome City Comm'n*, 426 F. App'x 884, 887 (11th Cir. 2011).

The Plaintiffs cannot create an issue of fact where one would otherwise not exist through conclusory allegations in an affidavit. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Here, the evidence demonstrates that a substantial amount of Estate money was spent in 2006 fending off attempts by the Defendants to gain control of the Estate. As alleged by the Plaintiffs, these monetary losses are injuries suffered by the Estate and, by extension, the Foundation. Likewise, there is no dispute that Lehman and, by extension, the Estate and the Foundation, were aware of these injuries when they occurred in 2006, because it was Lehman who was spending the Estate's money at that time. (*See, e.g.,* Lehman Aff. ¶¶ 34, 38, ECF No. 161-7; Letter from Lehman to The Florida Bar 31 (Apr. 3, 2012), ECF No. 161-18; Lehman Dep. 41:13 - 42:12, 43:19 - 45:4, 50:11-14, 62:6-12, Apr. 13, 2007, ECF No. 170-1; Lehman Dep. 518 - 531, 532 - 540, 550 - 564, 573 - 578, 581 - 586, July 13, 2007, ECF No. 170-4; *In Re Estate of Wilson C. Lucom*, No. 50 2006 CP003580XXXXSBIY, slip op. at ¶10 (Fla. 15th Cir. Ct. Mar. 5, 2009), ECF No. 17-1.)

The Plaintiffs also assert that "Lehman and Lehman P.A.'s RICO injury – the impact to business and property as a result of the RICO predicate acts – materialized at a point in time *after* the corrupt Supreme Court decision was introduced and used affirmatively in Florida courts by Defendants." (Pls.' Stmt. of Material Facts ¶ 14, ECF No. 161-1.) However, in the very same paragraph, these Plaintiffs admit that they were aware of injuries caused by the alleged RICO enterprise when the Florida complaint was filed in January 2007. (*Id.*) The Plaintiffs explain that these earlier injuries were "personal monies expended by Richard Lehman, personally, and his law firm as a result of the Defendants' onslaught of personal attacks against Lehman and his law firm." (*Id.*) The expenditure of money to counter the attacks from an alleged RICO enterprise is an injury suffered as a result of the alleged RICO enterprise. Again, there is no

dispute that both Lehman and Lehman, P.A. were aware of these injuries when they occurred in 2006, since they were spending their money at that time. (*See, e.g.,* Lehman Aff. ¶¶ 34, 38, ECF No. 161-7; Letter from Lehman to The Florida Bar 31 (Apr. 3, 2012), ECF No. 161-18; Lehman Dep. 41:13 - 42:12, 43:19 - 45:4, 50:11-14, 62:6-12, Apr. 13, 2007, ECF No. 170-1; Lehman Dep. 518 - 531, 532 - 540, 550 - 564, 573 - 578, 581 - 586, July 13, 2007, ECF No. 170-4; *In Re Estate of Wilson C. Lucom*, No. 50 2006 CP003580XXXXSBIY, slip op. at ¶10 (Fla. 15th Cir. Ct. Mar. 5, 2009), ECF No. 17-1.)

In a final effort to avoid the application of the statute of limitations to their RICO claims, the Plaintiffs argue that their RICO claim should not be considered to have accrued until after they had discovered a pattern of racketeering activity. (Pls.' Supp. Mem. 10-11, ECF No. 161.) This argument fails for two reasons. First, the Supreme Court has expressly rejected the injury and pattern discovery rule. *Rotella v. Wood*, 528 U.S. 549, 558 (2000). Second, as detailed above, and as evidenced by the January 2007 Florida complaint, the Plaintiffs here were clearly aware of both a pattern of alleged racketeering activities and specific injuries suffered as a result of that racketeering activity.

## IV. CONCLUSION

The RICO statute of limitations began to run on the date that the Plaintiffs became aware of their injuries at the hands of the alleged RICO enterprise. *Pac. Harbor Capital, Inc.*, 252 F.3d at 1251. Here, it cannot be disputed that the Plaintiffs were aware of injuries flowing from the Defendants' alleged enterprise at least as early as January 2007, as is evidenced by the allegations in the Florida complaint and the record before this Court. For these reasons, the RICO claims are barred by the statute of limitations. The Court declines to exercise supplemental jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367(c)(3) (2006).

For the reasons set forth in this Order, it is **ORDERED and ADJUDGED** that the Defendants' Motions for Summary Judgment (ECF Nos. 16, 51, 52, 53) are **GRANTED** as to the statute of limitations arguments. Judgment is entered in favor of the Defendants and against the Plaintiffs as to Counts I and II of the Plaintiffs' Complaint. Counts I and II are **DISMISSED with prejudice**. The remaining state claims are **DISMISSED without prejudice**, this Court having declined to exercise supplemental jurisdiction over these claims.

It is **FURTHER ORDERED** that, consistent with this order and judgment, the Clerk's Entry of Default (ECF No. 115) against Defendants Albert Cigarruista, William Parodi, Harley J.

Mitchell, and Oyden Ortega is **VACATED**. The Plaintiffs' Motion to Compel (ECF No. 147), and related Motion for Hearing (ECF No. 148) are **DENIED** as moot. The Plaintiffs' Motions to Compel (ECF Nos. 110, 111, 112, 113) are also **DENIED** as moot. The Plaintiffs' Motion For Order to Show Cause (ECF No. 114), and related Motion for Hearing (ECF No. 137) are **DENIED** as moot. The Plaintiffs' Motion for Leave to File Supplemental Memorandum of Law (ECF No. 132) is **GRANTED** *nunc pro tunc*. This Court reserves jurisdiction over the Defendants' Motions for Rule 11 Sanctions (ECF Nos. 26 & 108).

**DONE and ORDERED** in chambers, at Miami, Florida, on May 17, 2012.

**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

Copies to:
*Counsel of record*